UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

ARSALAN TOUFIGHJOU, acting on
behalf of infant child, A.R.T.,

    Petitioner,

v.                               Case No. 8:16-cv-1709-T-33JSS

RACHEL TRITSCHLER,

    Respondent.
_____/

**ORDER**

This cause comes before the Court pursuant to Petitioner Arsalan Toufighjou's Verified Petition for Return of the Child to Canada (Doc. # 1), which was filed on June 23, 2016. The Court held an evidentiary hearing on July 11, 2016. Both sides were represented by counsel and both gave sworn testimony at the hearing. After due consideration, the Court grants the Petition as set forth below.

    **A.**    **Background**

Toufighjou and Tritschler have been married since April 23, 2011, and have a three year old child, A.R.T. Toufighjou is A.R.T.'s father and is a citizen of Canada. He is employed full time as a restaurant owner and resides in Ontario, Canada.

1

Tritschler is A.R.T.'s mother. Tritschler was born in the United States and is a dual citizen of the United States and Canada. Tritschler moved to Canada for college and that is where she met Toufighjou. A.R.T. was born in Canada and is a dual citizen of the United States and Canada. The parties owned a large townhouse in Ontario, Canada but sold that property and moved into an apartment around April of 2015.

Also in April of 2015, Tritschler filed a Petition for Alien Relative on behalf of Toufighjou to obtain a green card for him, but notably, Toufighjou did not sign off on the paperwork. In May of 2015, Toufighjou was involved in the purchase of a new family restaurant in Canada. In July of 2015, both Toufighjou and Tritschler signed paperwork for A.R.T. to attend a daycare program in Florida.

On August 2, 2015, Toufighjou went on a short vacation to the Canadian side of Niagara Falls, which was to end on August 6, 2015. On August 5, 2015, Tritschler informed Toufighjou that she would be going to a friend's home for a few days. Toufighjou soon discovered, using the "find my iPhone App" that Tritschler had crossed the border into the United States and traveled to Florida with the child.

Tritschler removed the child from Canada with no warning to Toufighjou, and Toufighjou testified that Tritschler did not take her personal belongings to Florida. Immediately thereafter, Toufighjou contacted the police and hired an attorney. Toufighjou filed a request for return of the child with the Canadian government and took other formal and informal steps to secure his child's return to Canada.

Mere days after arriving in Florida with the child, Tritschler filed a Petition for Dissolution of Marriage in the Twelfth Judicial Circuit in Sarasota, Florida. Tritschler had Toufighjou personally served with the divorce papers in Canada. On November 17, 2015, the United States Department of State issued a letter to the Florida court advising it not to decide the merits of the rights of custody pending a Hague proceeding.

Since that time, Toufighjou has traveled to Florida on multiple occasions in an attempt to reconcile with Tritschler and to personally ask Tritschler to return the child to Canada. Tritschler likewise traveled to Canada with the child on two occasions, but the parties were unable to reach an accord. Notably, when Tritschler left Canada on March 8, 2016, with the child to return to Florida,

Tritschler stated that she has no intention of returning the child to Canada.

Accordingly, on June 23, 2016, Toufighjou filed a Verified Petition For Return of Child To Canada pursuant to the Convention on the Civil Aspects of International Child Abduction, Done at the Hague On October 25, 1980 and the International Child Abduction Remedies Act 22 U.S.C. § 9001, et seq. (Doc. # 1). In connection with the filing of the Verified Petition, Toufighjou filed a Motion for Temporary Restraining Order (Doc. # 2). Based on the allegations of the Verified Petition, Motion for TRO, and the memorandum submitted in support thereof, the Court entered an Order granting the TRO. (Doc. # 6). That Order barred Tritschler from removing the child from the Court's jurisdiction pending the outcome of these proceedings and also set the hearing on the Verified Petition, which gave Tritschler the opportunity to show cause "why the child should not be returned forthwith to Canada." (Id. at 4).

**B.   The Hague Convention and ICARA**

"The Hague Convention was enacted to 'secure the prompt return of children wrongfully removed to or retained in any Contracting State.'" Ruiz v. Tenorio, 392 F.3d 1247, 1250

(11th Cir. 2004). "The convention is intended as a rapid remedy for the left-behind parent to return the status quo before the wrongful removal or retention." Id. "The Court's inquiry is limited to the merits of the abduction claim and not the merits of the underlying custody battle." Id. (citing 42 U.S.C. § 11601(b)(4)). Canada is a contracting state within the meaning of Article I of the Hague Convention. Recently, the Supreme Court has stated, "When a parent abducts a child and flees to another county, the Hague Convention on the Civil Aspects of International Child Abduction generally requires that country to return the child immediately if the other parent requests return within one year." Lozano v. Montoya Alvarez, 134 S. Ct. 1224, 1228 (2014). Toufighjou claims the removal happened in August of 2015. Since the Petition was filed in June of 2016, the Petition is timely.

    **C.**    **Toufighjou's Prima Facie Case**

"[T]he petitioner is required to establish, by a preponderance of the evidence, that his child was 'wrongfully removed or retained within the meaning of the Convention.'" Ruiz, 392 F.3d at 1251 (citing 42 U.S.C. § 11603(e)(1)(A)). In order to prevail, Toufighjou must prove

5

that: (1) the child was a "habitual resident" of Canada at the time Tritschler removed her to the United States; (2) the removal was in breach of Toufighjou's custody rights under Canadian law; and (3) Toufighjou had been exercising those rights at the time of removal.  Ruiz, 392 F.3d at 1251.

"If Petitioner meets this burden, the child must be 'promptly returned unless one of the narrow exceptions set forth in the Convention applies'" Boehm v. Boehm, No. 8:10-cv-1986-T-27TGW, 2011 WL 863066, at *2 (M.D. Fla. Mar. 10, 2011) (quoting Lops v. Lops, 140 F. 3d 927, 936 (11th Cir. 2004)). The determination by the court that a child was wrongfully retained does not automatically mean that the child must be returned to his or her habitual residence. Rather, once the petitioner has proven his or her case, the burden shifts to the respondent to prove an affirmative defense against the return of the child to the country of habitual residence.  If a respondent proves one of the enumerated exceptions as an affirmative defense, a district court has the discretion to refuse to order the child be returned to his habitual residence.  Ago v. Odu, No. 8:09-

cv-976-T-17TBM, 2009 WL 2169857, at *9 (M.D. Fla. July 20, 2009).

Here, Tritschler does not dispute that Toufighjou has met each element of his prima facie case. First, the Court finds that the child is a habitual resident of Canada, and the record shows that the child resided in Canada up until her wrongful removal to Florida. Second, the Court finds that the child's removal from Canada, which was done without any warning to Toufighjou, breached his parental rights. Under the Children's Law Reform Act, R.S.O. 1990, C.12 Section 20(1), "the father and the mother of a child are equally entitled to custody of the child." There is no dispute that the child is Toufighjou's biological child and that the parties were married and lived together at the time of A.R.T's unannounced removal to Florida. Tritschler has conceded that Toufighjou had rights of custody at the time of the removal, and that Toufighjou's parental rights were violated under Canadian law at the time of the child's removal to Florida in August of 2015.

Finally, the Court finds that Toufighjou was exercising his custody rights at the time of the August 2015, removal of his child to Florida. Tritschler has conceded this

7

point, and Courts "liberally find exercise [of custody rights] whenever a parent with de jure custody rights keeps, or seeks to keep, any sort of regular contact with his or her child." Friedrich v. Friedrich, 78 F.3d 1060, 1065 (6th Cir. 1996).  As set forth above, Toufighjou has established his prima facie case, and the Court thus turns to Tritschler's affirmative defenses.

### D. **Affirmative Defenses of Consent and Acquiescence**

Tritschler relies on Article 13 of the Hague Convention, which indicates that "the requested State is not bound to order the return of the child if the person . . . which opposes its return establishes that the person . . . consented to or subsequently acquiesced in the removal or retention" of the child. Convention Art. 13(a); 22 U.S.C. § 9003(e)(2)(B).  Tritschler bears the burden to show consent or acquiescence by the preponderance of the evidence. Moreno v. Pena, No. 15-cv-2372, 2015 U.S. Dist. LEXIS 110141, at *33 (S.D.N.Y. Aug. 19, 2015); 42 U.S.C. § 11603(e)(2)(B).

"Consent and acquiescence are analytically distinct defenses to return under the Convention." Walker v. Walker, 701 F.3d 1110, 1112 (7th Cir. 2012). "The consent defense involves the petitioner's conduct prior to the contested

8

removal or retention, while acquiescence addresses whether the petitioner subsequently agreed to or accepted the removal or retention." Baxter v. Baxter, 423 F.3d 363, 371 (3d Cir. 2005). "The key to the consent inquiry is the petitioner's subjective intent, including the nature and scope of the alleged consent." In re Kim, 404 F. Supp. 2d 495, 516 (S.D.N.Y. 2005).

The facts at issue do not establish that Toufighjou consented to his child's removal from Canada to Florida. A.R.T.'s removal was made without warning and while Toufighjou was on a short vacation. Tritschler did not tell Toufighjou that she was going to remove his child, and Toufighjou therefore had no opportunity to consent to his child's removal to Florida. Although Tritschler has come forward with daycare paperwork that Toufighjou signed in April of 2015, that does not carry Tritschler's burden of demonstrating that Toufighjou consented to the August 2015 removal of his child. In addition, while Tritschler testified that she and Toufighjou sometimes discussed potentially moving to Florida, where her family resides, her testimony does not come close to showing that Toufighjou consented to his child's removal from Canada.

9

In addition, the nature of the child's removal (without any notice to Toufighjou and while Toufighjou was away), cuts against Tritschler's theory of consent. See Friedrich, 78 F.3d at 1069 ("[M]ost notably, . . . Mrs. Friedrich did not inform Mr. Friedrich that she was departing. . . . The deliberately secretive nature of her actions is extremely strong evidence that Mr. Friedrich would not have consented to the removal of [the child].").

In addition, the record does not show that Toufighjou acquiesced to his child's removal after that removal was made known to him. In fact, the Court finds that Toufighjou did everything in his power to secure his child's return to Canada after he learned that she had be transported across the border into Florida. He notified law enforcement and filed a police report. He hired an attorney, he personally traveled to Florida to ask Tritschler to return the child to Canada, and he attempted to reconcile with Tritschler. Tritschler admitted during the hearing that Toufighjou consistently and persistently demanded his daughter's return to Canada in the months after her wrongful removal to Florida. Toufighjou's consistent attempts to secure the

return of his child defeats Tritschler's postulation that Toufighjou has acquiesced to his child's removal.

### E. A.R.T. Will Return to Canada

Throughout the evidentiary hearing, the Court reminded the parties that its role is very limited. This Court will not be the final arbiter of any custody battle between the parties. "A court considering an ICARA petition has jurisdiction to decide the merits only of the wrongful removal claim, not of any underlying custody dispute." Lops v. Lops, 140 F.3d at 936. "The Hague Convention is intended to restore the pre-abduction status quo and deter parents from crossing the borders in search of a more sympathetic court." Id. (internal citation omitted).

Here, the Court determines that it is appropriate to require the child, A.R.T., to be returned to her habitual residence in Canada. The Court has been advised that there is already a dissolution of marriage lawsuit pending in Canada, and the Canadian Court will decide any custody dispute regarding A.R.T. No portion of this Order should be interpreted as deciding that custody dispute.

Because the Hague Convention is meant to provide a rapid remedy when a child is wrongfully removed, the Court

11

determines it is appropriate to order the child's return without delay. The parties have offered competing requests regarding the child's return. Toufighjou requests that Tritschler turn the child over to him in five days so that he may transport the child to Canada. Tritschler, on the other hand, requests a 30-day period for her to return to Canada with the child. The Haugue Convention provides a six-week window for the resolution of these cases, and Tritschler's request for thirty additional days to spend in Florida would extend this case well beyond those time limitations.

As the prevailing party, Toufighjou is entitled to an order mandating A.R.T.'s prompt return to Canada. To effectuate this result, the Court orders Tritschler to turn over A.R.T. to Toufighjou within **48 hours** of entry of this Order so that Toufighjou may transport A.R.T. to Canada without delay. The Court will leave it to the parties to determine the appropriate way to ensure that A.R.T. travels from Florida to Canada without delay.

Accordingly, it is

**ORDERED, ADJUDGED,** and **DECREED**:

(1) Toufighjou's Verified Petition (Doc. # 1) is **GRANTED**.

(2) The minor child A.R.T. shall be returned to Canada forthwith.

(3) Tritschler, and any person acting in concert with her, is prohibited from removing the child from the jurisdiction of this Court pending the child's return to Canada.

(4) Tritschler shall deliver A.R.T. (along with A.R.T.'s Canadian passport), to Toufighjou within **48 hours** of the entry of this Order, for the sole purpose of A.R.T.'s return to Canada. This Order does not extinguish Tritschler's parental rights. Tritschler is free to accompany Toufighjou and A.R.T. on the journey from Florida to Canada. The parties shall confer in good faith to coordinate A.R.T.'s prompt return to Canada.

(5) Toufighjou shall file a Notice with the Court as soon as the child has been returned to Canada.

(6) The Clerk is directed to close the case.

(7) In the instance that Toufighjou seeks attorneys' fees, costs, or expenses pursuant to 22 U.S.C. §

13

9007, he should file a Motion requesting the same by August 1, 2016.

**DONE** and **ORDERED** in Chambers in Tampa, Florida, this <u>18th</u> day of July, 2016, at 5:55 P.M.

VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE